1

2

3

4

5

6

7

8                                    UNITED STATES DISTRICT COURT

9                              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    KAREEM HOWELL,                              Case No.  1:22-cv-00277-HBK (PC)

12                    Plaintiff,                  FINDINGS AND RECOMMENDATIONS TO
                                                  DENY DEFENDANTS' EXHAUSTION
13          v.                                    BASED MOTION FOR PARTIAL
                                                  SUMMARY JUDGMENT[1]
14    N. VERA, et al.,
                                                  (Doc. No. 32)
15                    Defendants.
                                                   14-DAY DEADLINE
16

17

18          Pending before the Court is the exhaustion-based Motion for Partial Summary Judgment

19    filed by Defendants I. Ceballos, J.B. Fugate, I. Medina, J. Navarro, and N. Vera on July 18, 2024.

20    (Doc. No. 32, "MSJ").  Plaintiff timely filed an Opposition, (Doc. No. 33), and Defendants filed a

21    Reply.  (Doc. No. 34).  The undersigned recommends Defendants' MSJ be denied.

22                                    **I.      BACKGROUND**

23          **A.  Summary of Plaintiff's Complaint**

24          Plaintiff Kareem Howell ("Plaintiff' or "Howell"), a state prisoner, initiated this action by

25    filing a pro se civil rights complaint pursuant to 42 U.S.C § 1983.  (Doc. No. 1).  Plaintiff

26    proceeds on his First Amended Complaint ("FAC"), as screened, alleging claims of Eighth

27    _____

28    [1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302
      (E.D. Cal. 2023).

1    Amendment excessive use of force, First Amendment retaliation, and Eighth Amendment failure

2    to protect as to Defendants (1) I. Ceballos, (2) J. B. Fugate, (3) I. Medina, (4) J. Navarro and (5)

3    N. Vera.  (Doc. Nos. 7, 10, 12).

4    　　　The FAC alleges in relevant part that on October 2, 2019, while Plaintiff was incarcerated

5    at California State Prison - Corcoran ("CSP"), Defendant Fugate asked Plaintiff to sign a bed

6    move slip agreeing to let an ex-cell mate with whom he did not get along, Inmate Scott, return to

7    Plaintiff's cell, which Plaintiff refused.  (Doc. No. 7 at 5).  Defendant J. Gallenger nevertheless

8    ordered Defendant Fugate to forge Plaintiff's signature on the bed slip, to make it look like he

9    agreed to the bed move.  (*Id*. at 6).  Later that day, Defendants Ceballos, Medina, Vera, Fugate,

10   and Navarro approached Plaintiff's cell and ordered Plaintiff to submit to handcuffs, with which

11   Plaintiff complied.  (*Id*.).  Defendant Vera ordered Plaintiff to step to the back of his cell, which

12   Plaintiff did.  (*Id*. at 7).  Defendants Ceballos and Navarro then escorted Inmate Scott into

13   Plaintiff's cell.  (*Id*.).  Inmate Scott told Plaintiff, "They all want me to get you.  They said you

14   snitched on them."  (*Id*.).  Defendant Vera directed Inmate Scott to put his hands through the food

15   port and removed Scott's handcuffs.  (*Id*.).  Inmate Scott then punched Plaintiff—who was still

16   wearing handcuffs—one time in the face.  (*Id*.).  Defendants Vera, Fugate, and Medina started

17   yelling at Scott to continue the attack, shouting, "Get him! Get him!"  (*Id*. at 8).  Defendants

18   Ceballos and Navarro watched but did not take any action.  (*Id*.).  Inmate Scott did not continue

19   the attack.  (*Id*.).  Defendants then deployed OC spray on Plaintiff and Inmate Scott, entered the

20   cell and beat Plaintiff while he remained in handcuffs.  (*Id*. at 8-9).

21   　　　Plaintiff subsequently filed a grievance regarding the October 2, 2019 incident, in which

22   he stated in relevant part:

23
24
25
26
27
28
> On Oct. 2, 2019, J.B. Fugate approached my living cell and
> requested that I sign a bed move slip so that he could move I/M
> Scott back to my living cell . . . I refused to sign the bed move slip.
> The Captain told C/O Fugate to sign my name on the paper and
> move I/M Scott back into my cell anyway . . . Later that same day,
> C/O I. Ceballos, C/O I Medina, C/O/ N. Vera, C/O/ J.B. Fugate,
> and Sgt. J. Navarro all came to my cell. I was ordered to cuff up. I
> complied. C/O/ N. Vera told me to step to the back of my living
> cell.  The cell door was opened and C/O/ I. Ceballos and Sgt. J.
> Navarro placed I/M Scott into my living cell.  I/M/ Scott stated to
> me "They all want me to get you. They said you snitched." . . . I/M

2

1
2
3

> Scott handcuffs were removed. My handcuffs were kept on. . . I/M
> Scott punched me in my face . . and refused to continue the assault.
> The accused officers yelled for I/M Scott to "Get me!" However,
> I/M Scott refused all orders . . .

4     (Doc. No. 32-3 at 29, 31).

5            As relief, Plaintiff seeks injunctive relief, trial by jury, and monetary damages.  (*Id.* at 11).

6            **B.  Defendant's Exhaustion-Based Motion for Summary Judgment**

7            Defendants filed the instant exhaustion-based MSJ on July 18, 2024.  (Doc. No. 32).  In

8     support, Defendants submit a memorandum of points and authorities (Doc. No. 32), a Statement

9     of Undisputed Facts (Doc. No. 32-1), and the declaration of A. Vasquez (Doc. No. 32-2).

10    Defendants contend the uncontroverted evidence proves Plaintiff did not properly and fully

11    exhaust his available administrative remedies regarding his Eighth Amendment failure to protect

12    claims against Defendants.  (*See generally* Doc. No. 32).  Specifically, they argue that while

13    Plaintiff's grievance regarding the October 2, 2019 incident (Grievance 6449) properly alleged

14    excessive use force and retaliation, it did not allege any facts supporting a failure to protect claim.

15    (*Id*. at 7-9).

16            **C.  Plaintiff's Opposition to Exhaustion-Based MSJ**

17             On August 12, 2024, Plaintiff filed an Opposition.  (Doc. No. 33).  In support, Plaintiff

18    submits a Response to Defendants' Statement of Undisputed Facts (*id*. at 2), Plaintiff's

19    Declaration (*id*. at 3-6), an Argument/Conclusion (*id*. at 7-8), and copies of Plaintiff's grievance

20    and the administrative responses (*id*. at 9-18).

21            Plaintiff contends that Grievance 6449 put CDCR on notice as to his Eighth Amendment

22    failure to protect claims against the Defendants.  (*Id*. at 5).  Specifically, Plaintiff argues the

23    grievance alleged that Defendants "direct[ed] inmate Scott to (attack) Plaintiff, placing Inmate

24    Scott into Plaintiff's cell and removed his handcuffs so Scott could attack Plaintiff, for standing

25    by and watching Scott punch Plaintiff & for encouraging Scott to continue to fight Plaintiff."

26    (*Id*.).  Plaintiff asserts that Defendants misleadingly construe his claim as a "failure to intervene,"

27    and attack it for failure to assert sufficient facts to sustain that claim.  (*Id*. at 4-5).  Plaintiff

28    concedes he did not allege a failure to intervene, but rather that Defendants failed to protect him

1    by facilitating and encouraging an attack on him by Inmate Scott. (*Id*.).

2    For the reasons discussed below, the Court agrees with Plaintiff and finds there is no

3    genuine dispute of material fact that he did in fact exhaust his administrative remedies with

4    respect to the failure to protect claim.

5                              **II.       APPLICABLE LAW**

6        **A. Summary Judgment Standard**

7    Summary judgment is appropriate when there is "no genuine dispute as to any material

8    fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is

9    material where it is (1) relevant to an element of a claim or a defense under the substantive law

10   and (2) would affect the outcome of the suit. *See Anderson v. Liberty Lobby, Inc.* 477 U.S. 242,

11   247 (1987).

12   The party moving for summary judgment bears the initial burden of proving the absence

13   of a genuine dispute of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  When

14   the moving party has met this burden, the nonmoving party must go beyond the pleadings and set

15   forth specific facts by affidavits, deposition testimony, documents, or discovery responses,

16   showing there is a genuine issue that must be resolved by trial. *See* Fed. R. Civ. P. 56(c)(1);

17   *Pacific Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897 (9th Cir.

18   2021).  A mere "scintilla of evidence" in support of the nonmoving party's position is

19   insufficient. *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010).  Rather, the

20   evidence must allow a reasonable juror, drawing all inferences in favor of the nonmoving party,

21   to return a verdict in that party's favor. *Id.*

22   In an exhaustion-based summary judgment motion, the defendant bears the initial burden

23   of establishing "that there was an available administrative remedy, and that the prisoner did not

24   exhaust that available remedy." *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014).  If the

25   defendant carries that burden, "the burden shifts to the prisoner to come forward with evidence

26   showing that there is something in his particular case that made the existing and generally

27   available administrative remedies effectively unavailable to him." *Id.*  The ultimate burden of

28   persuasion remains, however, with defendant. *Id.*

1    The Court has carefully reviewed and considered all arguments, points and authorities,

2  declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and

3  other papers filed by the parties.  The omission to an argument, document, paper, or objection is

4  not to be construed that the Court did not consider the argument, document, paper, or objection.

5  Instead, the Court thoroughly reviewed and considered the evidence it deemed admissible,

6  material, and appropriate for purposes of this Order.

7    **B.  Exhaustion Under the PLRA**

8    Under the PLRA, "[n]o action shall be brought with respect to prison conditions under [42

9  U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other

10  correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C.

11  § 1997e(a).  The exhaustion requirement "applies to all inmate suits about prison life," including

12  *Bivens* claims.  *Porter v. Nussle*, 534 U.S. 516, 524, 532 (2002).  Exhaustion is a condition

13  precedent to filing a civil rights claim.  *Woodford v. Ngo*, 548 U.S. 81, 93 (2006).

14    The PLRA recognizes no exception to the exhaustion requirement, and the court may not

15  recognize a new exception, even in "special circumstances."  *Ross v. Blake*, 578 U.S. 632, 648

16  (2016).  The one significant qualifier is that "the remedies must indeed be 'available' to the

17  prisoner."  *Id.* at 639.  A prison's internal grievance process controls whether the grievance

18  satisfies the PLRA exhaustion requirement.  *Jones v. Bock*, 549 U.S. 199, 218 (2007).

19    An inmate must exhaust available remedies but is not required to exhaust unavailable

20  remedies.  *Albino v. Baca*, 747 F.3d 1162, 1171 (9th Cir. 2014) (*en banc*).  "To be available, a

21  remedy must be available 'as a practical matter'; it must be 'capable of use; at hand.'" *Id*.

22  (quoting *Brown v. Valoff*, 422 F.3d 926, 936–37 (9th Cir. 2005)).  "Accordingly, an inmate is

23  required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain

24  'some relief for the action complained of.'"  *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016)

25  (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)).

26    Failure to exhaust under the PLRA is "an affirmative defense the defendant must plead

27  and prove."  *Jones*, 549 U.S. at 204.  It is the defendant's burden to prove that there was an

28  available administrative remedy, and that the prisoner failed to exhaust that remedy.  *Albino*, 747

1    F.3d at 1172.  "Once the defendant has carried that burden, the prisoner has the burden of

2    production.  That is, the burden shifts to the prisoner to come forward with evidence showing that

3    there is something in his case that made the existing and generally available administrative

4    remedies effectively unavailable to him."  *Id.*  If the court concludes that the prisoner failed to

5    exhaust available administrative remedies, the proper remedy is dismissal without

6    prejudice.  *See Jones*, 549 U.S. at 223–24; *Lira v. Herrera*, 427 F.3d 1164, 1175–76 (9th Cir.

7    2005).

8           **C.  CDCR Grievance Procedures**

9           The California Department of Corrections and Rehabilitation's ("CDCR") administrative

10   remedy process governs this action.[2]  *See* Cal. Code Regs. tit. 15, § 3084.1 (2016).  To exhaust

11   available remedies, an inmate must proceed through three formal levels of review unless

12   otherwise excused under the regulations.  *Id.* § 3084.5.  A prisoner initiates the exhaustion

13   process by submitting a CDCR Form 602 "Inmate/Parolee Appeal" ("grievance").  *Id.* §§

14   3084.2(a), 3084.8(b) (quotation marks omitted).  The grievance must "describe the specific issue

15   under appeal and the relief requested," and the inmate "shall list all staff member(s) involved and

16   shall describe their involvement in the issue."  *Id.* § 3084.2(a).  The inmate "shall state all facts

17   known and available to him/her regarding the issue being appealed at the time of submitting the

18   Inmate/Parolee Appeal Form, and if needed, the Inmate Parolee/Appeal Form Attachment."  *Id.* §

19   3084.2(a)(4).

20          An inmate must submit an appeal within thirty calendar days of "[t]he occurrence of the

21   event or decision being appealed" or "[u]pon first having knowledge of the action or decision

22   being appealed."  *Id*. § 3084.6(c)(4).  Under certain circumstances, an appeal will be accepted

23   after the deadline.  A late appeal may only be canceled where "the inmate or parolee had the

24   opportunity to submit within the prescribed time constraints."  *Id*.  Further, "at the discretion of

25   the appeals coordinator or third level Appeals Chief, a cancelled appeal may later be accepted if a

26

27   _____

[2] Effective June 1, 2020, California Code of Regulations Title 15, sections 3084 through 3084.9 were
repealed and replaced with renumbered and amended provisions at sections 3480 through 3487.  *See*
28   *Springs v. Raber*, 2022 WL 1004561, at *3 (S.D. Cal. Apr. 4, 2022).  All the citations in this order are to
the regulations in place in 2019, the relevant time period for this action.

1    determination is made that cancellation was made in error or new information is received which

2    makes the appeal eligible for further review." *Id*. at § 3084.6(a)(3).  Further, under exceptional

3    circumstances an appeal may be accepted for review beyond the 30-day deadline, for instance,

4    when an inmate is medically incapacitated and unable to file an appeal.  *Id*. at § 3084.6(a)(4).

5           Where an appeal is cancelled due to a procedural error on the part of the inmate,

6    administrative remedies remain available to the inmate—namely appealing the cancellation

7    decision. *See Cortinas v. Portillo*, 754 F. App'x 525, 527 (9th Cir. 2018) ("Because [plaintiff]

8    could have appealed his cancellation decision . . . the improper cancellation of his appeal did not

9    render administrative remedies effectively unavailable to him."); *Davenport v. Gomez*, No. 2:16-

10   CV-1739, 2019 WL 636844, at *15 (E.D. Cal. Feb. 14, 2019) (noting that the appeals process is

11   available where the plaintiff can raise the cancellation appeal to the next level).

12                                    **ANALYSIS**

13   **A.  Material Facts Regarding Exhaustion of Administrative Remedies**

14          Following a thorough review of the evidence submitted, the Court finds these material

15   facts are deemed undisputed, unless otherwise indicated:

16       •   In October 2019, Plaintiff Howell was an inmate in the custody of the California

17           Department of Corrections and Rehabilitation ("CDCR") at California State Prison,

18           Corcoran ("CSP").  (Doc. No. 7 at 1).

19       •   There was a formal administrative grievance process available to Howell at CSP.

20           (Doc. No. 32-3 at 2-4; Doc. No. 33 at 2).

21       •   Plaintiff filed a grievance regarding an incident that occurred at CSP on October 2,

22           2019, assigned Log # CSP-19-06449 ("Grievance 6449").  (Doc. No. 32-3 at 5, 29-32;

23           Doc. No. 33 at 2).

24       •   Under the section of the grievance labeled "Stated briefly the subject of your appeal"

25           Plaintiff wrote: "*Unnecessary use of force *Stagging [sic] violence *Retaliation."

26           (Doc. No. 32-3 at 29).

27       •   In the facts section of the grievance Plaintiff states in relevant part:

28               On Oct. 2, 2019, J.B. Fugate approached my living cell and

                                          7

1
2
3
4
5
6
7
8

> requested that I sign a bed move slip so that he could move I/M Scott back to my living cell . . . I refused to sign the bed move slip. The Captain told C/O Fugate to sign my name on the paper and move I/M Scott back into my cell anyway . . . Later that same day, C/O I. Ceballos, C/O I Medina, C/O/ N. Vera, C/O/ J.B. Fugate, and Sgt. J. Navarro all came to my cell. I was ordered to cuff up. I complied. C/O/ N. Vera told me to step to the back of my living cell.  The cell door was opened and C/O/ I. Ceballos and Sgt. J. Navarro placed I/M Scott into my living cell.  I/M/ Scott stated to me "They all want me to get you. They said you snitched." . . . I/M Scott handcuffs were removed. My handcuffs were kept on. . . I/M Scott punched me in my face . . and refused to continue the assault. The accused officers yelled for I/M Scott to "Get me!" However, I/M Scott refused all orders . . .

9     (*Id*. at 29, 31).

10    • Defendants acknowledge that Plaintiff fully exhausted Grievance 6449 as to his other
11    claims for First Amendment retaliation and Eighth Amendment excessive use of force,
12    but assert that the language in Grievance 6449 did not exhaust Plaintiff's Eighth
13    Amendment failure to protect claim.  (Doc. No. 32 at 2).

14    • Plaintiff did not file any other grievances regarding the October 2, 2019 incident at
15    CSP.  (Doc. No. 32-3 at 4-5 ¶¶ 12-16; Doc. No. 33 at 2).

16    **B. Plaintiff's Exhaustion of his Eighth Amendment Failure to Protect Claim**

17    Here, it is not contested that Grievance 6449 was exhausted through all three levels of

18    administrative review.  (Doc. No. 32 at 2).  The parties appear to be in complete agreement as to

19    the facts regarding exhaustion of administrative remedies.  (See Doc. No. 34 at 3).  The only

20    contested issue is whether the assertions Plaintiff made in Grievance 6449 adequately exhausted a

21    claim for Eighth Amendment failure to protect.  Defendants argue that Grievance 6449 does not

22    exhaust that claim because it contains no allegation that Defendants "failed to intervene or

23    protect" Plaintiff.  (Doc. No. 32 at 7).  Moreover, the second and third level responses to

24    Plaintiff's Grievance did not acknowledge a failure to protect claim.  (Doc. No. 34 at 5).  Thus,

25    Defendants contend the Grievance did not provide prison officials notice of Plaintiff's failure to

26    protect claim such that they had an opportunity to remedy the alleged harm.  (Doc. No. 32 at 7-8).

27    Plaintiff argues that his Grievance does allege such a claim and contends that Defendants

28    misleadingly characterize his claim as alleging "failure to intervene" rather than "failure to

1  protect" and thus attempt to analyze it under an inapposite standard.  (Doc. No. 33 at 4-5).

2  The Court finds that the plain language of Plaintiff's grievance contradicts Defendants

3  argument that Plaintiff failed to exhaust his Eighth Amendment failure to protect claim.  Plaintiff

4  clearly alleges that Defendants incited and encouraged another inmate to attack Plaintiff and

5  orchestrated the October 2, 2019 incident in which Inmate Scott assaulted Plaintiff.  (*See* Doc.

6  No. 32-3 at 29, 31).  While it is true that in the correctional setting, Eighth Amendment failure to

7  protect claims more commonly involve prison officials who fail to prevent harm to the plaintiff,

8  courts in this district have also recognized such a claim where prison officials are alleged to have

9  created the harm or encouraged one inmate to attack another.  *See, e.g., Fratus v. Uchi*, 2022 WL

10  1462228, at *5 (E.D. Cal. Feb. 15, 2022) (finding cognizable Eighth Amendment failure to

11  protect claim where "not only did [officers] know of [plaintiff's] risk of assault and fail to prevent

12  it, they orchestrated it"); *see also Barnes v. Denney*, 2010 WL 1006489, at *17 (E.D. Cal. Mar.

13  17, 2010) ("Any and every reasonable corrections officer would know that the Eighth

14  Amendment would be violated if an officer set up the beating of an inmate by other inmates, or

15  knowingly, permitted or facilitated the inevitable beating").

16  Likewise here, Plaintiff's Grievance alleges that Defendants Ceballos, Medina, Vera,

17  Fugate, and Navarro brought Inmate Scott to Plaintiff's cell with the explicit purpose of

18  orchestrating an attack by Scott on Plaintiff.  (Doc. No. 32-3 at 29, 31).  Defendants put Plaintiff

19  in handcuffs and removed Scott's handcuffs, knowing that Scott would assault Plaintiff, and

20  rather than prevent the harm, they verbally encouraged it.  (*Id*.).  The Court finds these facts

21  adequately put prison officials on notice of an Eighth Amendment failure to protect claim against

22  those same Defendants.  And given that Defendants do not otherwise contest that Plaintiff

23  properly exhausted Grievance 6449, the undersigned finds there is no genuine dispute as to

24  whether Plaintiff exhausted his administrative remedies as to his Eighth Amendment failure to

25  protect claim.  The undersigned therefore finds recommends the District Court deny Defendants'

26  exhaustion-based motion for partial summary judgment.

27  ////

28  ////

9

1

**CONCLUSION**

2       The Court finds the undisputed record demonstrates that Plaintiff fully exhausted his

3   available administrative remedies as to his Eighth Amendment failure to protect claim against

4   Defendants Ceballos, Fugate, Medina, Navarro, and Vera.  Thus, Defendants are not entitled to

5   partial summary judgment on Plaintiff's Eighth Amendment failure to protect claim.

6       Accordingly, it is **ORDERED**:

7       The Clerk of Court shall randomly assign this case to a District Judge for consideration of

8   these Findings and Recommendations.

9       It is further **RECOMMENDED**:

10      Defendants Ceballos, Fugate, Medina, Navarro, and Vera's Exhaustion Based Motion for

11  Partial Summary Judgment (Doc. No. 32) be **DENIED**.

12      **NOTICE**

13      These Findings and Recommendations will be submitted to the United States District

14  Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days

15  of the date of service of these Findings and Recommendations, a party may file written objections

16  with the Court.  The document should be captioned, "Objections to Magistrate Judge's Findings

17  and Recommendations." A party's failure to file objections within the specified time may result in

18  waiver of his rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing

19  *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

20

21  Dated:   ___November 26, 2024___

22                                          HELENA M. BARCH-KUCHTA
                                            UNITED STATES MAGISTRATE JUDGE
23

24

25

26

27

28